UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-*against*-

ROBERT PENA,

                    Defendant.

**OPINION & ORDER**

18 Cr. 844 (ER)

RAMOS, D.J.:

Robert Pena is currently serving a 40-month sentence of incarceration following a guilty plea for conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Before the Court is his *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Doc. 98.[1] For the reasons set forth below, Pena's motion is DENIED.

I.      **BACKGROUND**

        A.      **Prior Proceedings**

Pena's conviction stems from an agreement to commit an armed robbery. Doc. 104, Gov. Opp., at 1. In early June 2018, Pena met with two confidential sources who were involved in a joint investigation conducted by the New York City Police Department and Drug Enforcement Administration. *Id.* Pena indicated to the sources that he would recruit others to participate in the robbery, and that they would be prepared with firearms. *Id.* (citing Presentence Investigation Report ["PSR"] ¶¶11–12)).

Over the next several weeks, Pena and the codefendants in this case had extensive discussions with one of the confidential sources about the logistics of the anticipated robbery.

---

[1] Pena's motion also sought a sentence reduction pursuant to 28 U.S.C. § 2255, for independent reasons. The Court bifurcated briefing on these motions and will address his § 2255 motion in a separate order.

On the day the robbery was scheduled to occur, the confidential informant picked up Pena in the Bronx.  *Id.* at 2.  The group also picked up Pena's armed codefendants.  *Id.*  (citing PSR ¶ 23).  When Defendants were arrested, two guns were recovered from their vehicle.  *Id.* (citing PSR ¶¶ 23–28).

On November 5, 2019, Pena pleaded guilty to Count One of the indictment, conspiracy to commit Hobbs Act robbery.   Doc. 60.  The Court sentenced Pena on July 28, 2020.  Doc. 92. At sentencing, the Court noted that the anticipated robbery would have been an "extraordinarily dangerous offense, involving the use of weapons that were provided by the co-conspirators." *Id.* at 16:9–11.   The Court also observed that Pena had been active in recruiting others to join the conspiracy.  *Id.* at 16:19–22.  Finally, the Court considered the fact that Pena had been on probation and a conditional discharge when the offense was committed.  *Id.* at 17:16–20. However, the Court recognized that Pena had submitted several letters from friends and family, including a letter from a member of the Metropolitan Correctional Center ("MCC") staff.  *Id.* at 18:3–16.  The Court also noted that Pena's support showed that he was "certainly looking to better himself" and "move forward with his life."  *Id.* at 18:17–19.

### B.    Pena's Motion

On February 8, 2021, Pena filed his *pro se* motion for compassionate release and to correct his sentence pursuant to 18 U.S.C. § 2255.  Doc. 98.  Pena argued that he was at risk of contracting COVID-19 based on its spread in the Westchester County Jail, where he was detained.  *Id.* at 4.  Pena argued that his asthma and obesity were COVID-19 comorbidities and thus constituted extraordinary and compelling reasons for release.  *Id.*  Pena also argued that he was close to the end of his sentence because, if good time credit were applied, he would be

eligible for release in May 2021 once he could be transferred to a BOP facility.[2]  *Id.* at 4, Doc. 105, Reply Br., at 2.

The Government opposed his motion.  Doc. 104.  It conceded that Pena suffered from COVID-19 comorbidities, but argued that the dangerous nature of the robbery conspiracy weighed against release.  *Id.* at 4.  It also argued that Pena committed the offense while on probation and a conditional discharge.  *Id.*  Finally, the Government has noted that Pena's disciplinary record in custody shows that a June 2020 search of his cell uncovered a substance believed to be suboxone, as well as two weapons.  *Id.* at 5.

In his reply, Pena responds that the contraband uncovered in the search was placed there by other inmates who wished to have him removed from the unit.  Doc. 105 at 3.  He states that they planted the contraband and encouraged officers to search the unit.  *Id.*

## II.  LEGAL STANDARD

### A.  18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release."  *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the

---

[2] At the time of Pena's motion, judgment had not yet formally been entered.  The Court entered judgment against Pena on February 11, 2021.  The Government's Opposition states that it has "asked counsel for the Bureau of Prisons to ensure that Pena is designated and transferred expeditiously."  Doc. 104 at 5.  As of the date of this Order, it is not clear whether Pena has been transferred to a BOP prison facility.

court, but only after he has fully exhausted all administrative rights.  *See* 18 U.S.C. §

3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what

reasons, for purposes of compassionate release, are "extraordinary and compelling."  *See*

U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D).  The BOP Policy

Statement includes as an "extraordinary and compelling reason" the existence of "a serious

physical or medical condition . . . that substantially diminishes the ability of the defendant to

provide self-care within the environment of a correctional facility and from which he or she

is not expected to recover."  U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I).  It also permits the Court to

consider whether the incarcerated person "is not a danger to the safety of any other person or

to the community, as provided in 18 U.S.C. § 3142(g)."  *Id.* at § 1B1.13(2).   However, the

Second Circuit in *United States v. Brooker* recently held that the First Step Act also "freed

district courts to consider the full slate of extraordinary and compelling reasons that an

imprisoned person might bring before them in motions or compassionate release."  *See* 976

F.3d 228, 237 (2d Cir. 2020).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may

reduce the term of imprisonment (and may impose a term of probation or supervised release

with or without conditions that does not exceed the unserved portion of the original term of

imprisonment), after considering the factors set forth in Section 3553(a) to the extent that they

are applicable."  18 U.S.C. § 3582(c)(1)(A).  These factors include the nature and circumstances

of the offense; the history and characteristics of the defendant; the need for the sentence

imposed, and the need to avoid unwarranted sentence disparities.   18 U.S.C. § 3553(a).

## III.   DISCUSSION

### A.      Extraordinary and Compelling Reasons

Pena suffers from asthma and obesity.  Doc. 98 at 4.  The Government has conceded that his obesity constitutes an extraordinary and compelling reason for his release.  Doc. 104 at 4.  Thus, this motion hinges on the application of the considerations set forth in 18 U.S.C. § 3553(a).

### B.      The Remaining Section 3553(a) Factors

The additional factors set forth in 18 U.S.C. § 3553(a) counsel against release under these circumstances.  At Pena's sentencing, the Court considered all relevant factors, including his enthusiastic participation in the armed robbery conspiracy and recruitment of others to join it. *See* Doc. 92 at 16:16–22.  The Court also considered the fact that the offense was committed while Pena was on probation and under supervision.  *Id.* at 17:16–20.  However, the Court also considered the support of Pena's friends and family, which Pena demonstrated through his sentencing submissions.  *Id.* at 18:1–4.  Based on the totality of these factors, the Court imposed a 40-month sentence, which was well-below the 57–71 month guideline range.  *See id.* at 6:22–23.[3]  This sentence was imposed on July 28, 2020, several months into the COVID-19 pandemic.  Thus, it was imposed with due consideration of the challenges of managing COVID-19 in the prison environment.

Pena has not submitted additional evidence regarding the application of the § 3553(a) factors in this motion.  Rather, his argument focuses on the delay between his sentencing and the entry of judgment in this case.  Pena argues that, had the judgment been entered at the time

---

[3] The Government sought a sentence of 57 months, at the bottom of the guideline range.  *Id.* at 7:9–11.

of his sentencing, he would have been earlier transferred to a BOP facility. He further argues that, had this happened, he "would already have been released from the sentence imposed." Doc. 105 at 2. In support he cites 18 U.S.C. § 3624, which sets forth the circumstances under which an inmate may be eligible for early release through good time credit.

However, this argument is speculative, as the Bureau of Prisons is entrusted with calculating good time credit, and has considerable discretion in doing so. *See* 18 U.S.C. § 3624(b). While the Court is not aware of authority directly governing this precise scenario, courts in similar situations have rejected arguments predicated on an assumption about what the BOP might have done regarding a good time credit determination. *See United States v. Hilario*, 449 F.3d 500, 501 (2d Cir. 2006) (per curium) (finding no abuse of discretion when a district court denied a downward departure based on defendant's "speculative assertion that he would have earned good time credit in a BOP prison had he served his time in such a facility"); *see also United States v. Evans*, 1 F.3d 654, 655 (7th Cir. 1993) (the district court did not err in "refusing to award good time credit against his federal sentence for time spent in state custody," reasoning that "that defendant "must ask the Bureau of Prisons for the credit he seeks"); *United States v. Nixon*, 919 F.3d 1265, 1275–76 (10th Cir. 2019) (rejecting as speculative defendant's argument that he was prejudiced by the delay of his federal arraignment while in state custody, even if this delay resulted in the lost opportunity for good-time credit). Thus, Pena's argument based on § 3624 does not change the Court's assessment that the § 3553(a) factors weigh against compassionate release.

The Government also suggests that additional deterrence from criminal behavior is warranted based on an incident in Pena's disciplinary history, in which a substance believed to be suboxone was found in his cell, as well as two weapons. Doc. 104 at 5. Pena vehemently

denies that these materials were his, stating that these were planted by other individuals in the jail who hid them in his cell and tipped off jail staff.  Doc. 105 at 3.  There is insufficient information before the Court for it to determine which side of this story is true, so the Court will not place significant weight on the reported infraction or on Pena's explanation.  However, as discussed above, the Court nevertheless believes that its imposed sentence was appropriate. Indeed, the Court duly took into account Pena's support from an MCC staff member at the time of his sentencing.  *See* Doc. 92 at 18:9–16.  In the absence of additional evidence showing that the Court's previous balancing of the factors set forth in § 3553(a) is no longer sound, the Court finds that these factors weigh against compassionate release.

Finally, the Court emphasizes that in rejecting Pena's argument based on § 3624, it takes no position on whether the BOP should find that Pena is eligible for good time credit or home confinement.  It only holds that it would be improper for the Court to speculate as to how the BOP will—or should—exercise its discretion on these questions.  These are the BOP's determinations to make in the first instance.

### C.    Pena's Motion for Bail Pending this Motion

Pena has also submitted a motion for release on bail pending the determination of this compassionate release motion.  Doc. 106.  This motion is DENIED as moot.

## IV.   CONCLUSION

For the reasons discussed, Pena's motion for compassionate release is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, as well as his bail motion, Docs. 98 and 106.  The Clerk of Court is also respectfully instructed to mail a copy of this order to Pena.

It is SO ORDERED.

Dated:    April 26, 2021.
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.